UNITED STATES of America, Plaintiff,

v.

Marc LONG, Defendant.

No. CIV.A. 3:97–CR–18.

United States District Court,
N.D. West Virginia.

Dec. 12, 1997.

Thomas O. Mucklow, Martinsburg, WV, for Plaintiff.

Barry P. Beck, Martinsburg, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

On the 5th day of November 1997, the above-styled criminal action came before the Court for consideration of the Magistrate Judge's recommendation to grant the defendant's motion to suppress defendant's statements. The defendant appeared in person and by his counsel, Barry P. Beck. The United States of America appeared by Thomas O. Mucklow, Assistant United States Attorney. For reasons set forth below, the Court is of the opinion that the motion to suppress should be denied.

### I. INTRODUCTION

The defendant is charged with two felony counts. Count One concerns the use of the United States mail in facilitating the distribution of marijuana in violation of 21 U.S.Code § 843(b). Count Two concerns the possession of 1976.5 grams of marijuana with intent to distribute in violation of Title 21 U.S.Code § 841(a)(1). Both offenses are alleged to have occurred on February 26, 1997.

Pursuant to the defendant's motion to suppress, a hearing was held before Magistrate James E. Seibert on September 15, 1997. The government presented the testimony of Steve Randolph, United States Postal Inspector, and Tammy Gaither, a Martinsburg, West Virginia City Police Officer and member of the joint drug task force. The defendant did not present any testimony.

### II. STATEMENT OF FACTS

Prior to the hearing held in district court, the Court had an opportunity to listen to a

tape recording of the hearing made at the September 15, 1997 suppression hearing and subsequently review a transcript thereof. Based upon the recording, transcript, and exhibits filed during that hearing along with the Government's pre-trial discovery disclosures, the Court found the pertinent facts to be as follows.

Postal Inspector Randolph began "profiling" express mail packages in the Berkeley County area in an effort to identify the shipment of controlled substances. During this profiling, Inspector Randolph used a dog trained to recognize the smell of controlled substances.

On February 24, 1997, the dog "alerted positively" for controlled substances on a United States Postal Service Priority Mail package from California addressed to Marc C. Long, Inwood, West Virginia. The package measured 18 inches by 18½ inches by 10 inches deep and weighed 23 pounds, 15 ounces.

Inspector Randolph then filed a 12 page, 18 paragraph application and affidavit for Search Warrant with Magistrate Judge Fisher. The Affidavit detailed the mail profiling and the dog alerting positively for either crack, marijuana, heroine, cocaine or hashish. Based on this affidavit, Magistrate Judge Fisher issued a search warrant of the package.

Inspector Randolph then searched the package. His Search Warrant Inventory lists nine packages of a green leaf material, field tested as marijuana, and a small amount of dark ball-like material, .7 grams, field tested as amphetamine.

Inspector Randolph then coordinated a controlled delivery of the package to the addressee, Marc C. Long, at the Inwood, West Virginia Post Office.

On February 26, 1997, the defendant, Marc C. Long, came to the Post Office and claimed the Priority Mail package. Inspector Randolph and Police Officer Gaither, a member of the multi-jurisdiction drug task force, along with other Martinsburg officers, confronted Long outside of the Post Office. Inspector Randolph stated that he told Long that they knew what was in the package,

needed to discuss the matter and asked him to come inside the Post Office. Randolph stated that Long was not under arrest. Officer Gaither stated that Long was "detained." Inspector Randolph, Inspector Wilock, and Officer Gaither went to a room in the Post Office with Long. Randolph testified that Long was not restrained in any manner and was free to leave. Although Officer Gaither stated that Long was "detained" and then questioned, he also testified that Long was free to leave and was not restrained during questioning.

Once inside the room in the Post Office, Inspector Randolph told Long that he knew what was in the package. He then gave Long written Miranda warnings and waiver. After he advised him of his rights, Long initialed, dated and signed both of the documents.

After the Miranda warnings and waiver were signed, Inspector Randolph told Long that there were "at least 8 pounds of marijuana" and "another illegal substance" the size of the "tip of a finger" that field tested as possibly "heroin" or "methamphetamine," but that he "wasn't sure" and would "send it to the lab."

Upon hearing this, Inspector Randolph said Long was "excited" and "surprised." Officer Gaither testified that Long was "surprised and upset."

Inspector Randolph questioned Long for an hour to an hour and a half. Randolph stated that he did not make any promises to Long, but he did tell him the "more you cooperate, the more lenient the Court would look at him." However, Inspector Randolph did tell Long that he would "be charged by the United States Attorney."

After questioning, Long also signed a written Consent to Search for his residence apartment. Inspector Randolph drove to Long's apartment in Inwood. Long drove his own car to the apartment. Inspector Randolph left the apartment after the search and told Long to call him if he was interested in cooperating with law enforcement. The cooperation concerned the criminal activities of the mailer of the package, David Olea.

Long was not arrested or placed in either federal or state custody at that time.

On February 28, 1997, Long called Inspector Randolph and told him that he would be unable to provide assistance due to safety issues with his brother living in California. Inspector Randolph made a written memorandum of this call on the same date and mentioned again that the Priority Mail package contained "approximately eight (8) pounds of marijuana."

On that same date, Inspector Randolph sent the contents of the Priority Mail package to the National Forensic Laboratory of the United States Postal Inspection Service. This included the nine (9) packages of suspected marijuana and the small dark hard substance.

By letter dated March 27, 1997, the National Forensic Lab determined that the nine (9) packages contained marijuana, weighing a total of 1,976.50 grams, approximately 4½ pounds, and that the small dark brown substance contained no controlled substance.

### III.  DISCUSSION OF LAW

Defendant's counsel maintains that Long's statements during the interrogation were not free and voluntary because they were given after Inspector Randolph made incorrect claims regarding the quantity of the marijuana along with the presence of heroin and because Inspector Randolph made direct or indirect promises of leniency.

The reasoning of the Miranda warnings requirement was based in crucial part on whether the suspect had "been taken into custody or otherwise deprived of his freedom in any significant way." *U.S. v. Beckwith,* 510 F.2d 741, 742 (D.C.Cir.1975); affirmed, 425 U.S. 341, 344, 96 S.Ct. 1612, 1615, 48 L.Ed.2d 1 (1976); *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966). While Long was not arrested and not restrained against his will, Officer Gaither testified that he was "detained" for questioning. Although this raises questions as to whether this was actually a custodial interrogation, Inspector Randolph did have Long read, initial and sign his Miranda warnings and waiver.

In determining whether a confession is voluntary, the test is whether it was "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the extraction of any improper influence." *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 203–04, 50 L.Ed.2d 194 (1976); and *U.S. v. Braxton,* 112 F.3d 777, 779 (4th Cir.1997). The Supreme Court has further required "coercive police activity" be a "necessary predicate" in order to find that "a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986).

■ Even the existence of threats, violence, implied promises, improper influence or other coercive police activity does not automatically render a defendant's confession involuntary. *Braxton,* 112 F.3d at 780. The correct inquiry will be "whether the defendant's will has been 'overborne' or his capacity for self-determination critically impaired." *U.S. v. Pelton,* 835 F.2d 1067, 1071 (4th Cir.1987). Therefore, any confession that is "given freely and voluntarily without any compelling influence is admissible." *Braxton,* 112 F.3d at 781.

■ In order to determine whether a defendant's will has been overborne or his capacity for self-determination critically impaired, the Court must consider the "totality of the circumstances," "including the characteristics of the defendant, the setting of the interview and the details of the interrogations." *Pelton,* 835 F.2d at 1071; and *U.S. v. Wertz,* 625 F.2d 1128, 1134 (4th Cir.1980).

■ Although Inspector Randolph's belief as to the weight of the marijuana and nature of the brown substance as a controlled drug are documented before and after his questioning of Long, the defendant's counsel asserts the government agent, either intentionally or unintentionally, mislead the defendant. Counsel relied at oral argument upon the decision of *Green v. Scully,* 850 F.2d 894 (2nd Cir.1988).

The law enforcement officers in *Green* offered the defendant psychiatric help, made reference to the electric chair, and engaged in chicanery by falsely asserting that they

already had a strong case against the defendant by telling him that his fingerprints matched prints in blood found in the victims apartment. Based upon the totality of the circumstances, the Second Circuit held the defendant's confession was voluntary because it was given upon his fear that he would do something to his own family in a blackout as he had done to his murder victims. *Green,* 850 F.2d at 903–4.

In utilizing the *Pelton* and *Wertz* factors, also cited in *Green,* the Court concludes that Long's statement was voluntarily given after being informed of and waiving his Miranda rights. The Post Office room was not a coercive investigating scene. Long was not under arrest, was not restrained, and was free to go. The interview lasted for just over an hour. The information given by Inspector Randolph was as correct as he knew it to be at the time. Although he may have been "surprised" and "upset", Long acted cooperatively and voluntarily. Indeed, he subsequently signed a written consent to search his apartment. After the interview, he was not taken into custody, but he drove to his apartment alone in his own car. After the apartment search was conducted, Inspector Randolph left, and Long again was not placed in custody.

## IV. CONCLUSION

In reference to the totality of the circumstances of the interview, the Court concludes that the defendant's statements were given voluntarily after having been informed of his Miranda rights and were not the result of any intentional misstatements of fact or promises of leniency that overborne his capacity for self-determination.

The Court, therefore, **ORDERS** that the defendant's motion to suppress statement and consent to search is **DENIED** (Document Number 10).